**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**WADE HICKS, ERIN HICKS, LILY**
**HICKS, HUNTER HICKS, AND OWEN HICKS**

      **Plaintiffs,**

**vs.**

**BOMBARDIER RECREATIONAL**
**PRODUCTS INC., BRP U.S. INC., BRP INC.**
**and KINGS BAY POWERSPORTS,**

      **Defendants.**

_____/

## **COMPLAINT**

By and through their undersigned counsel, Plaintiffs Wade and Erin Hicks (husband and wife) bring the instant civil action against Bombardier Recreational Products, Inc., BRP U.S. Inc., BRP Inc. (hereinafter, referred to collectively as "BRP"), and Kings Bay Powersports, and allege and state as follows:

## **INTRODUCTION**

1.    Plaintiffs assert claims against Defendants BRP and Kings Bay Powersports sounding in, *inter alia*, negligence and products liability.

2.    Plaintiffs' claims arise from a rollover accident suffered by Plaintiff Wade Hicks on or about October 31, 2020, while operating a 2019 Can-Am Maverick Sport DPS side-by-side vehicle, VIN # 3JB1TAX44KK000205 (hereinafter, referred to as "the subject side-by-side") designed and manufactured by BRP and sold by Kings Bay Powersports.

3.      As set forth herein, Plaintiffs contend that BRP and Kings Bay Powersports should be held strictly liable, and liable for recklessness and negligence, in connection with their: (1) failure to adequately warn about the risks associated with the subject side-by-side vehicle, (2) defective design of the subject side-by-side vehicle, and (3) defective manufacturing of the subject side-by-side vehicle.

4.      The Can-Am Maverick Sport DPS presents a safety hazard and is unreasonably dangerous to consumers.  The 3-point seatbelt provided in the Can-Am Maverick Sport DPS side-by-side vehicle does not adequately restrain a driver, making it more likely that the driver will be seriously injured during a rollover accident, even when the seat belt is properly used.

5.      Alternative reasonable designs exist for the 3-point seatbelt.  BRP advertises a 4-point harness on its website that a customer may add as an optional feature to the Can-Am Maverick Sport DPS.

6.      As a result of Defendants' practices, Plaintiff Wade Hicks suffered personal injuries during the rollover accident.

7.      Plaintiffs seek compensatory damages for Plaintiff Wade Hicks' personal injuries, non-economic damages, and Plaintiff Erin Hicks' loss of consortium.

## PARTIES

8.      Plaintiffs are citizens of Florida, residing at 153057 County Road 108, Yulee, Florida 32097.

9.      Defendant Bombardier Recreational Products Inc., is a foreign for-profit corporation, organized and existing under the laws of Canada and having its international headquarters at 726 rue Saint-Joseph, Valcourt, Quebec, Canada J0E 2L0.

10.     Defendant BRP U.S. Inc. is a corporation organized and existing under the laws of the State of Delaware, and having a principal place of business at 10101 Science Drive, Sturtevant, Wisconsin 53177-1757.  BRP U.S. Inc. is registered and does business in Florida.  BRP U.S. Inc. is entirely owned by Bombardier Recreational Products Inc.  BRP U.S. Inc. maintains a regular and established place of business in this Judicial District at 201 North University Drive, Suite 501, Coral Springs, Florida 33071.

11.     Defendant BRP Inc. is a foreign for-profit corporation, incorporated and existing under the laws of Canada, with its principal place of business in Valcourt, Quebec.  Bombardier Recreational Products Inc., BRP U.S. Inc., and BRP Inc. operate as a single entity for the purposes of designing, manufacturing, marketing, distributing, and warranting the Can-Am Maverick Sport DPS in Florida.

12.     Kings Bay Powersports is a business located at 1999 Commerce Drive, Kingsland, GA 31548.  Kings Bay Powersports does business in Florida.[1]

13.     On its website, BRP states that Kings Bay Powersports is a dealer of BRP's products, and in fact, BRP provides contact information for Kings Bay Powersports, as well as store hours, products, and brands.[2]  BRP further represents that: "Dealers are selected for their commitment to customer satisfaction and continuous improvement of services."[3]

---

[1] Kings Bay Powersports maintains a website on which it states, "We are the Honda® and BRP premier powersports dealer proudly serving S.E. Georgia & N.E. Florida."  *See* https://www.kingsbayhonda.net/information-about-us--info (last visited 6/13/2022).  On its Facebook page, Kings Bay Powersports posts photographs of customers standing next to the vehicles they have purchased along with a caption that includes the customer's city of residence. Many of the customers live in Florida.  *See* https://www.facebook.com/kingsbay.honda (last visited 6/13/2022).
[2] https://can-am.brp.com/off-road/us/en/find-a-dealer.html#/dealer--e8b5bb9e-03c2-6af1-93f2-005056ba18ae?lat=30.801543&lng=-81.5623849 (last visited 6/13/2022).
[3] *Id.*

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendants are diverse in citizenship, and the amount in controversy is more than $75,000.00.

15.     This Court has general personal jurisdiction over all Defendants because all Defendants operate, conduct, engage in, or carry on business in this state.

16.     This Court has specific personal jurisdiction over all Defendants because (1) Plaintiffs are residents of Florida; and (2) Plaintiffs were injured by the subject side-by-side in Florida.

17.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391, because Defendants are subject to personal jurisdiction in this district, have advertised in this district, and has received substantial revenue and profits from their sales of products in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.  Furthermore, Defendants BRP maintain a regional office in this district.

## FACTS

### *Purchase of the Subject Side-by-side*

18.     On or about August 18, 2020, the subject side-by-side was purchased from Kings Bay Powersports in Kingsland, GA for use by the Plaintiffs Wade Hicks and Erin Hicks.

19.     Below is a photograph of the subject side-by-side after it was purchased.

4



20.     Below is a photograph of the receipt from Kings Bay Powersports for the purchase of the subject side-by-side.

***Plaintiff's Rollover Accident***

21.    On or about October 31, 2020, Plaintiff Wade Hicks was driving the subject side-by-side at his residence.  The speed of the subject side-by-side did not exceed 15 miles per hour. Plaintiff was wearing his seatbelt and maintained both of his hands on the steering wheel.

22.    As Plaintiff was navigating the subject side-by-side through a turn, the subject side-by-side tipped over and fell onto its right side.

23.    As the subject side-by-side tipped over, Plaintiff's seatbelt became loose, and Plaintiff's head and right shoulder contacted the subject side-by-side.  Plaintiff suffered excruciating physical pain as a result of the impact.

24.    Plaintiff, his wife Erin Hicks, his mother-in-law Carrie Brewster, and his two children Lily and Hunter Hicks were present and witnessed the accident.

25.    Shortly after the accident, Plaintiff was taken to the hospital.  Plaintiff was treated for a laceration of the scalp and was later diagnosed with an AC joint separation.

26.    About two weeks following the accident, Plaintiff underwent an AC joint reconstruction surgery.

27.    Plaintiff has participated in and continues to participate in rehabilitation activities for his shoulder injury.

28.    Following the accident, Plaintiff has not regained the full use of his shoulder, and his physical abilities are severely limited.  Plaintiff's cannot perform many of the responsibilities related to his job that he was able to perform prior to the accident.  Plaintiff cannot perform many of the household duties he was able to perform before the accident.  Plaintiff's limited physical abilities have adversely impacted his relationships with his wife and his children.

### Side-by-side Vehicles

29.     BRP's website describes a side-by-side vehicle:

A side-by-side vehicle (SxS) or utility task vehicle (UTV) is a four-to six-wheeled off-road vehicle with side-by-side bucket seats—hence their name—and a steering wheel much like you'd see in a car. They also pack many features you'll see in a car like seatbelts, foot gas and brake pedals, and roll bars or cages. Their rough-and-tumble capabilities make them popular as recreational off-road vehicles, but they've become more and more useful as work vehicles to those living in rural areas or on farms, where hauling and towing are a daily job. Basically, with a variety of models and options, it's possible to find a SxS that'll do almost whatever you throw at it.[4]

30.     BRP's website explains the difference between a side-by-side and an all-terrain vehicle (ATV):

An all-terrain vehicle (ATV), also known as four-wheeler or quad, is an off-road vehicle with straddle seating and handlebar steering much like a motorcycle. Many comfortable two-person ATV models are out there, but most work best for a single rider. On the other hand, SxSs or UTVs are designed to carry more people—at least two passengers and up to six—and are controlled by a steering wheel and gas and brake pedals as opposed to handlebars. SxSs have a bigger payload capacity than ATVs, meaning they can tow larger loads for those wanting to tow equipment around the ranch or farm.[5]

31.     BRP's website explains some of the advantages of a side-by-side vehicle:

A SxS or UTV will be best for you if you're a less experienced rider who will be more comfortable with familiar car-like operating controls, prefer a less physically demanding style of riding required by an ATV, want to carry passengers, or for whom safety is a top priority and would like seatbelts and a roll cage. Due to their design and lower centre of gravity, SxSs are also more stable and easier to control than a typical ATV.[6]

---

[4] https://can-am.brp.com/off-road/us/en/can-am-world/blog/side-by-side-utv-buying-guide.html (last visited 6/13/2022).
[5] *Id.*
[6] *Id.*

***BRP's Design of the 2019 Can-Am Maverick Sport DPS and Accompanying Warnings***

32.     On the 2019 Can-Am Maverick Sport DPS, BRP has placed a warning label that states the following: "Improper Use of Off-Highway Vehicles Can Cause Severe Injury or Death:"



33.     The warning label further states, "Rollovers Have Caused Severe Injuries and Death, Even on Flat, Open Areas:"



34.     BRP provides a hardcopy of an Operator's Guide to customers who purchase a new side-by-side or all-terrain vehicle.[7]   Additionally, electronic copies of the Operator's Guide are available online free of charge.[8]

35.     The 2019 Operator's Guide for the Can-Am Maverick Sport (hereinafter "the Guide") acknowledges that rollovers and tipovers can occur.  In total, the Guide mentions the word "rollover" 39 times and the words "tip over" and "tipover" 12 times.[9]

36.     The Guide provides the following warning: "YOUR VEHICLE CAN BE HAZARDOUS TO OPERATE.  A collision or rollover can occur quickly, if you fail to take proper precautions, even during routine maneuvers such as turning and driving on hills or over obstacles. For your safety, understand and follow all the warnings contained in this Operator's Guide and on the labels on your vehicle.  Failure to follow these warnings can result in SEVERE INJURY OR DEATH."[10]

37.     The Guide provides suggestions for what to do in the case of a rollover or tipover. For example, BRP advises:

> **Be Prepared in Case of Rollover**
> -   Close the doors and fasten seat belt to help you avoid sticking out arms or legs.
> -   Never grab the cage or ROPS while riding.  Hands can be crushed between the cage or ROPS and the ground in a rollover. Keep hands on the steering wheel or handholds.
> -   Never try to stop a rollover using your arms or legs.  If you think that the vehicle may tip or roll, the driver should keep both hands on the steering wheel and the left foot firmly planted on the footrest. The passengers should keep both hands on the handhold and both feet firmly planted on the floor.[11]

---

[7] https://can-am.brp.com/off-road/us/en/owner-zone/getting-started/vehicle-information/can-am-off-road-owner-manual.html (last visited 6/13/2022).
[8] *Id*.
[9] https://www.operatorsguides.brp.com/public/tmp/919005EN.pdf (last visited 6/13/2022).
[10] *Id.* at back of cover page.
[11] *Id*. at 19.

38.     The Guide further advises, "This vehicle is equipped with 3 points seat belts to help protect driver and passenger in the event of a collision, rollover, or tipover.  The **seat belts can help keep occupants stay** in the passenger compartment."[12]  BRP then warns, "Wear seat belts properly at all times**.  Seat belts reduce the risk of injury** in a crash and help keep limbs inside the cockpit in a rollover or any accidents."[13]

39.     On its website, BRP allows customers to customize their Can-Am Maverick Sport. A customer can select a basic package, or for additional fees, a customer can add one or more accessories, including a 4-point harness to either the driver side or the passenger side.  The 4-point harnesses are available under the heading of "Performance."[14]

40.     For the 2022 Can-Am Maverick Sport customization, the description for the 4-point harness states, "Exclusive controlled decelerator technology (patent pending) absorbs additional energy in case of accident.  Designed to offer maximum riding comfort.  Easy one-click latch and release:"[15]



---

[12] *Id*. at 59 (emphasis added).
[13] *Id*. (emphasis added).
[14] https://can-am.brp.com/off-road/us/en/customize-your-own/app.html?platform=SSV_MAVERICK_SPORT_60&package=4X4_DPS&unitid=0009GNA00 (last visited 6/13/2002).
[15] *Id*.

41.     In another section of BRP's website, the 4-point harnesses are available as add-on accessories and are grouped into "Seats, Harnesses & Accessories."[16]  "For those rides where a friend wants to tag along, or the adventures that require a co-pilot to help you navigate a new set of trails, nothing will be more important than their comfort.  Can-Am's superior quality side by side seat kits will help you make sure that everybody enjoys the ride in **uncompromised** comfort and **safety**."[17]  Both the 4-point driver's side harness and passenger's side harness are listed on this webpage.

42.     Under the heading of "Product Responsibility" on its website, BRP states:

> We are committed to providing products that are safe and in compliance with all applicable laws and regulations established for the protection of consumers.  More specifically, BRP is committed to the following actions:
>
> - **Offer safe products** and be in compliance with all applicable laws and regulations;
> - Integrate **state-of-the-art product safety principles in all product-related areas** including design, engineering, testing, procurement, manufacturing, marketing and after sales services;
> - Provide clear and **accurate product safety information** to our customers;
> - Undertake appropriate and timely investigations and corrective actions, when necessary, in response to product safety concerns.[18]

43.     In the "Product Responsibility" portion of the BRP website, BRP states:

> CAN-AM SIDE-BY-SIDE VEHICLES
> OPERATOR'S SEAT BELT USE REMINDER
> To remind the driver to fasten his seat belt, the vehicle speed is limited to about 20 km/h when belt is not fastened.[19]

---

[16] https://can-am-shop.brp.com/off-road/us/en/accessories/sxs-accessories/seats-harnesses-accessories.html (last visited 6/13/2022).
[17] *Id.* (emphasis added).
[18] https://brp.com/en/sustainability/product-responsibility.html (last visited 6/13/2022) (emphasis added).
[19] *Id.*

11

44.     In the "Owner Zone," BRP encourages customers to "Watch Our Videos."[20]  When a customer clicks on "Watch Our Videos," they are redirected to a YouTube channel entitled "Can-Am Off-Road."[21]

45.     In a video entitled "Can-Am Maverick vs Competitors: Safety," a man states: "As a safety instructor, my favorite feature of the Maverick was that it's governed until you put your seat belt on.  So many people know there's a seatbelt in products, but they won't wear it.  I'm really happy that it's designed with a governor, so if your seatbelt's not on, it goes about 15 kilometers an hour.  So it will make people wear the seatbelt, which is gonna keep them safer.  So fantastic design."[22]

## COUNT I: FAILURE TO WARN (STRICT LIABILITY)
### Against Defendants BRP and Kings Bay Powersports

46.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, all prior paragraphs in this Complaint.

47.     Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the subject side-by-side, and in the course of the same, directly promoted or marketed the Can-Am Maverick Sport DPS to consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of the Can-Am Maverick Sport DPS.

48.     The subject side-by-side was defective and unreasonably dangerous when it left the possession of Defendants in that the Can-Am Maverick Sport DPS contained warnings and directions which were misleading and were inadequate and insufficient to alert consumers, such

---

[20] https://can-am.brp.com/off-road/us/en/owner-zone.html  (last visited 6/13/2022)
[21] https://www.youtube.com/canamoffroad (last visited 6/13/2022)
[22] https://www.youtube.com/watch?v=AfHuo8Os1N4  (last visited 6/13/2022)

as Plaintiff, to the dangerous risks and reactions associated with the Can-Am Maverick Sport DPS, including the risk of the 3-point seatbelt not properly restraining a driver in the instance of a rollover accident.

49.   Defendants, manufacturers, promoters, and sellers of all-terrain vehicles (ATVs) and side-by-side vehicles, are held to the level of knowledge of an expert in the field, and further, Defendants had knowledge of the dangerous risks of the Can-Am Maverick Sport DPS of which they failed to warn Plaintiff.

50.   Plaintiff did not have the same knowledge as Defendants, and no adequate warning was communicated to Plaintiff.

51.   As a direct and proximate result of Defendants' failure to warn about the risks of the subject side-by-side, Plaintiffs have suffered and will continue to suffer: significant and permanent loss of important bodily function; permanent and significant scarring; aggravation or activation of an existing disease or physical defect; pain and suffering; disability; physical impairment; mental anguish and/or emotional distress; inconvenience; loss of capacity for the enjoyment of life; past and future medical expenses; and lost wages and future loss of earning capacity.

52.   As a result of their injuries, Plaintiffs seek compensatory damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

## COUNT II: DESIGN DEFECT (STRICT LIABILITY)
### *Against Defendants BRP and Kings Bay Powersports*

53.   Plaintiffs reallege and incorporate by reference, as if fully set forth herein, all prior paragraphs in this Complaint.

54.   At all times material hereto, Defendants engaged in the business of selling, distributing, manufacturing, marketing, labeling, and/or promoting the subject side-by-side, which

was unreasonably dangerous, and therefore defective.  The subject side-by-side was defective as labeled.

55.     The subject side-by-side was defective and unreasonably dangerous when it entered the stream of commerce and was received by Plaintiff because:

    a. When placed in the stream of commerce, the subject side-by-side contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting users and consumers like Plaintiff to risks which exceed the benefits of the Can-Am Maverick Sport DPS;

    b. The subject side-by-side was insufficiently and inadequately tested;

    c. The subject side-by-side was unreasonably defective when used as intended especially in light of the fact that there existed a safer design of the product;

    d. The subject side-by-side failed to perform as safely as a reasonable consumer would expect when using it as intended or in a reasonably foreseeable manner;

    e. The intended use of the subject side-by-side caused injury which outweighed any potential utility; and

    f. The subject side-by-side was marked and promoted for use as a safe product for off-road use, and it was not safe for its intended use.

56.     As a direct and proximate result of Defendants' defective design of the subject side-by-side, Plaintiffs have suffered and will continue to suffer: significant and permanent loss of important bodily function; permanent and significant scarring; aggravation or activation of an existing disease or physical defect; pain and suffering; disability; physical impairment; mental anguish and/or emotional distress; inconvenience; loss of capacity for the enjoyment of life; past and future medical expenses; and lost wages and future loss of earning capacity.

57.     As a result of their injuries, Plaintiffs seek compensatory damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

**COUNT III: MANUFACTURING DEFECT (STRICT LIABILITY)**
*Against Defendants BRP and Kings Bay Powersports*

14

58.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, all prior paragraphs in this Complaint.

59.     At all times relevant herein, Defendants took part in and/or were responsible for the manufacture, selection, inspection, testing, design, assemblage, equipment, marketing, distribution, and/or sale of the subject side-by-side vehicle and its component parts, including but not limited to its defective driver's seat belt system, to Plaintiff at some point prior to the rollover accident.

60.     At all times relevant herein, Defendant BRP manufactured the subject side-by-side vehicle and its driver's seat belt system and each Defendant owed Plaintiff a duty of reasonable care to manufacture, select, inspect, test, assemble, equip, market, distribute, and sell the subject side-by-side vehicle and its components, including the driver's seat belt system, so that it would provide a reasonable degree of occupant protection and safety during foreseeable accidents occurring in the environment of its expected use.

61.     At all times relevant herein, Defendants were collectively and respectively negligent, grossly negligent, willful, wanton, reckless and careless and breached their duties of care owed to Plaintiff by:

   a.  failing to adopt and implement adequate safety hierarchy procedures and policies;

   b.  failing to manufacture, test, assemble and/or install the driver's seat belt system so as to prevent it from loosening in a rollover collision and failing to adequately restrain an occupant during a rollover;

   c.  failing to exercise reasonable care in the manufacture of the subject side-by-side and its driver's seat belt system;

   d.  failing to exercise reasonable care in the testing of the subject side-by-side and its driver's seat belt system;

   e.  failing to exercise reasonable care in the inspection of the subject side-by-side and its driver's seat belt system;

    f.   failing to adopt and implement adequate warnings regarding subject side-by-side and its driver's seat belt system; and

    g.   failing to incorporate appropriate quality assurance procedures in manufacture of the of the subject side-by-side and its driver's seat belt system.

62.    As a direct and proximate result of Defendants' defective manufacturing of the subject side-by-side, Plaintiffs have suffered and will continue to suffer: significant and permanent loss of important bodily function; permanent and significant scarring; aggravation or activation of an existing disease or physical defect; pain and suffering; disability; physical impairment; mental anguish and/or emotional distress; inconvenience; loss of capacity for the enjoyment of life; past and future medical expenses; and lost wages and future loss of earning capacity.

63.    As a result of their injuries, Plaintiffs seek compensatory damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

<strong><u>COUNT IV: NEGLIGENCE</u></strong><br><strong><em>Against Defendants BRP and Kings Bay Powersports</em></strong>

64.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, all prior paragraphs in this Complaint.

65.    Defendants directly or indirectly negligently manufactured, designed, tested, researched and developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold the Can-Am Maverick Sport DPS across the United States and in the state of Florida.

66.    At all times material hereto, Defendants had a duty to Plaintiff to exercise reasonable case in the design, manufacture, research and development, testing, processing, advertising, marketing, labeling, packaging, distribution, promotion, and the sale of the subject side-by-side.

67.     Defendants breached their duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiff in the following ways:

    a.   failing to test and inspect the subject side-by-side in a reasonable manner in order to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured, labeled, and sold;

    b.   failing to utilize and implement a reasonably safe design in the manufacture of the subject side-by-side;

    c.   failing to manufacture the subject side-by-side in a reasonably safe condition;

    d.   failing to label the subject side-by-side so as to warn the Plaintiff of the danger of not being adequately restrained by a seatbelt during a rollover accident; and

    e.   manufacturing the subject side-by-side, which is an unreasonably dangerous side-by-side vehicle when used as instructed.

68.     Defendants knew or should have known that the subject side-by-side had unreasonably dangerous risks of which Plaintiff would not be aware.

69.     As a direct and proximate result of Defendants' negligent acts and omissions in connection with the subject side-by-side, Plaintiffs have suffered and will continue to suffer: significant and permanent loss of important bodily function; permanent and significant scarring; aggravation or activation of an existing disease or physical defect; pain and suffering; disability; physical impairment; mental anguish and/or emotional distress; inconvenience; loss of capacity for the enjoyment of life; past and future medical expenses; and lost wages and future loss of earning capacity.

70.     As a result of their injuries, Plaintiffs seek compensatory damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

## COUNT V: NEGLIGENCE FOR PERMANENT INJURY TO PARENT (§ 768.0415)
### *Against Defendants BRP and Kings Bay Powersports*

71.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, all prior paragraphs in this Complaint.

72.     Defendants directly or indirectly negligently manufactured, designed, tested, researched and developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold the Can-Am Maverick Sport DPS across the United States and in the state of Florida.

73.     At all times material hereto, Defendants had a duty to Plaintiff to exercise reasonable case in the design, manufacture, research and development, testing, processing, advertising, marketing, labeling, packaging, distribution, promotion, and the sale of the subject side-by-side.

74.     Defendants have, through their negligence, caused significant permanent injury to Plaintiff Wade Hicks.

75.     Plaintiffs Lily Hicks, Hunter Hicks, and Owen Hicks are children of Plaintiffs Wade Hicks and Erin Hicks.

76.     Plaintiffs Lily Hicks, Hunter Hicks, and Owen Hicks have suffered damages, including and not limited to, permanent loss of services, comfort, companionship, and society due to the permanent injury of their father, Plaintiff Wade Hicks.

## COUNT VI: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### *Against Defendants BRP*

77.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, all prior paragraphs in this Complaint.

78.     BRP is a "merchant," as defined in the Florida Uniform Commercial Code ("UCC").  § 672.104(1), Fla. Stat.

79.     The Can-Am Maverick Sport DPS is a "good" as defined in the UCC.  § 672.104(1), Fla. Stat.

80.     BRP was in privity with Plaintiff because Plaintiff and was a foreseeable and intended user of the subject side-by-side and the beneficiary of warranties relating to the subject side-by-side.

81.     BRP impliedly warranted that the subject side-by-side was of merchantable quality, fit, safe, and in a proper condition to be used with reasonable safety, efficiency, and comfort.  *See* § 672.314, Fla. Stat.

82.     More specifically, BRP warranted that the subject side-by-side would pass without objection in the trade; was of fair average quality; was fit for the ordinary purposes for which it was to be used; would operate as side-by-side vehicles similar in kind, price, and quality; would be adequately contained, packaged, and labeled; and would conform to all affirmations of fact made regarding the quality and performance of the subject side-by-side.

83.     The subject side-by-side, when manufactured by BRP, was in a defective condition and was unreasonably dangerous to users and consumers.

84.     The subject side-by-side was not of merchantable quality and was unfit, unsafe, and unusable for the ordinary purpose for which it was intended.

85.     BRP breached the implied warranty of merchantability by failing to properly design, manufacture, test, and inspect the subject side-by-side and by delivering a side-by-side vehicle that was unfit for ordinary use.

86.     As a direct and proximate result of Defendants' breach of implied warranty in connection with the subject side-by-side, Plaintiffs have suffered and will continue to suffer: significant and permanent loss of important bodily function; permanent and significant scarring;

aggravation or activation of an existing disease or physical defect; pain and suffering; disability; physical impairment; mental anguish and/or emotional distress; inconvenience; loss of capacity for the enjoyment of life; past and future medical expenses; and lost wages and future loss of earning capacity.

87.    As a result of their injuries, Plaintiffs seek compensatory damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

## COUNT VII: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### *Against Kings Bay Powersports*

88.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, all prior paragraphs in this Complaint.

89.    Kings Bay Powersports is a "merchant," as defined in the Florida Uniform Commercial Code ("UCC").  § 672.104(1), Fla. Stat.

90.    The subject side-by-side is a "good" as defined in the UCC.  § 672.104(1), Fla. Stat.

91.    Kings Bay Powersports was in privity with Plaintiff because the subject side-by-side was purchased from Kings Bay Powersports for use by Plaintiff.

92.    Kings Bay Powersports impliedly warranted that the subject side-by-side was of merchantable quality, fit, safe, and in a proper condition to be used with reasonable safety, efficiency, and comfort.  *See* § 672.314, Fla. Stat.

93.    More specifically, Kings Bay Powersports warranted that the subject side-by-side would pass without objection in the trade; was of fair average quality; was fit for the ordinary purposes for which it was to be used; would operate as side-by-side vehicles similar in kind, price, and quality; would be adequately contained, packaged, and labeled; and would conform to all affirmations of fact made regarding the quality and performance of the subject side-by-side.

94.     The subject side-by-side, when sold by Kings Bay Powersports, was in a defective condition and was unreasonably dangerous to users and consumers.

95.     The subject side-by-side was not of merchantable quality and was unfit, unsafe, and unusable for the ordinary purpose for which it was intended.

96.     Kings Bay Powersports breached the implied warranty of merchantability by failing to properly inspect the subject side-by-side and by selling a side-by-side vehicle that was unfit for ordinary use.

97.     As a direct and proximate result of Defendants' breach of implied warranty in connection with the subject side-by-side, Plaintiffs have suffered and will continue to suffer: significant and permanent loss of important bodily function; permanent and significant scarring; aggravation or activation of an existing disease or physical defect; pain and suffering; disability; physical impairment; mental anguish and/or emotional distress; inconvenience; loss of capacity for the enjoyment of life; past and future medical expenses; and lost wages and future loss of earning capacity.

98.     As a result of their injuries, Plaintiffs seek compensatory damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

### COUNT VIII: BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
*Against Defendants BRP*

99.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, all prior paragraphs in this Complaint.

100.    BRP is a "merchant," as defined in the Florida Uniform Commercial Code ("UCC").  § 672.104(1), Fla. Stat.

101.    The subject side-by-side is a "good" as defined in the UCC.  § 672.104(1), Fla. Stat.

102.   BRP was in privity with Plaintiff because Plaintiff was a foreseeable and intended user of the subject side-by-side and the beneficiary of the warranties relating to the subject side-by-side.

103.   At the time that the subject side-by-side was purchased, BRP knew or should have known that the subject side-by-side was being purchased for a particular purpose, including, but not limited to, use as a vehicle for driving off-road and that it would be necessary to operate the subject side-by-side with the seat belt system properly restraining an occupant in a rollover accident.

104.   At the time that the subject side-by-side was purchased, BRP knew or should have known that Plaintiff was relying on BRP's skill and judgment to select, furnish, and provide the subject side-by-side that was fit to be used for a particular purpose, including, but not limited to, use as a vehicle for driving off-road and that it would be necessary to operate the subject side-by-side with the seat belt system properly restraining an occupant in a rollover accident.

105.   BRP impliedly warranted that the subject side-by-side was reasonably fit for Plaintiff's intended use.

106.   Plaintiff relied on the skill, representations, and judgment of BRP to furnish a product fit for its intended use.

107.   At the time that the subject side-by-side was purchased, defects existed in the subject side-by-side that were not discoverable by simple observation at the time of delivery.  As a result of the defects, the subject side-by-side was not fit for its intended purpose.

108.   BRP breached the implied warranty of fitness for a particular purpose by selecting, furnishing, and providing subject side-by-side that was not fit for its intended purpose and was otherwise unfit.

109.     As a direct and proximate result of Defendant BRP's breach of implied warranty in connection with the subject side-by-side, Plaintiffs have suffered and will continue to suffer: significant and permanent loss of important bodily function; permanent and significant scarring; aggravation or activation of an existing disease or physical defect; pain and suffering; disability; physical impairment; mental anguish and/or emotional distress; inconvenience; loss of capacity for the enjoyment of life; past and future medical expenses; and lost wages and future loss of earning capacity.

110.     As a result of their injuries, Plaintiffs seek compensatory damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

### COUNT IX: BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
#### *Against Defendant Kings Bay Powersports*

111.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, all prior paragraphs in this Complaint.

112.     Kings Bay Powersports is a "merchant," as defined in the Florida Uniform Commercial Code ("UCC").  § 672.104(1), Fla. Stat.

113.     The subject side-by-side is a "good" as defined in the UCC.  § 672.104(1), Fla. Stat.

114.     Kings Bay Powersports was in privity with Plaintiff because the subject side-by-side was purchased from Kings Bay Powersports for use by the Plaintiff.

115.     At the time that the subject side-by-side was purchased, Kings Bay Powersports knew or should have known that the subject side-by-side was being purchased for a particular purpose, including, but not limited to, use as a vehicle for driving off-road and that it would be necessary to operate the subject side-by-side with the seat belt system properly restraining a driver in a rollover accident.

116.    At the time that the subject side-by-side was purchased,, Kings Bay Powersports knew or should have known that Plaintiff was relying on BRP's skill and judgment to select, furnish, and provide the subject side-by-side that was fit to be used for a particular purpose, including, but not limited to, use as a vehicle for driving off-road and that it would be necessary to operate the subject side-by-side with the seat belt system properly restraining an occupant in a rollover accident.

117.    Kings Bay Powersports impliedly warranted that the subject side-by-side was reasonably fit for Plaintiff's intended use.

118.    Plaintiff relied on the skill, representations, and judgment of Kings Bay Powersports to furnish a product fit for its intended use.

119.    At the time that the subject side-by-side was purchased, defects existed in the subject side-by-side that were not discoverable by simple observation at the time of delivery.  As a result of the defects, the subject side-by-side was not fit for its intended purpose.

120.    Kings Bay Powersports breached the implied warranty of fitness for a particular purpose by selecting, furnishing, and providing the subject side-by-side that was not fit for its intended purpose and was otherwise unfit.

121.    As a direct and proximate result of Defendant Kings Bay Powersports' breach of implied warranty in connection with the subject side-by-side, Plaintiffs have suffered and will continue to suffer: significant and permanent loss of important bodily function; permanent and significant scarring; aggravation or activation of an existing disease or physical defect; pain and suffering; disability; physical impairment; mental anguish and/or emotional distress; inconvenience; loss of capacity for the enjoyment of life; past and future medical expenses; and lost wages and future loss of earning capacity.

122.    As a result of their injuries, Plaintiffs seek compensatory damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

**COUNT X: NEGLIGENT MISREPRESENTATION**
***Against Defendants BRP***

123.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, all prior paragraphs in this Complaint.

124.    Defendant BRP is the manufacturer, designer, distributor, seller or supplier of the subject side-by-side and, while engaged in the course of such business, made representations to Plaintiff regarding the character and/or quality of, for guidance in Plaintiff's decision to select the subject side-by-side for use.

125.    Defendant BRP had a duty to disclose material information about potential hazards to consumers such as Plaintiff.  Defendant BRP negligent failed to disclose this information for the purpose of inducing consumers to purchase Defendant's BRP's dangerous products.

126.    Specifically, Defendant BRP's website and marketing materials regarding the subject side-by-side made material misrepresentations to the effect that the subject side-by-side was safe, for the purpose of inducing consumers to purchase said product.  Defendant further misrepresented that its products were just as safe, and just as effective or more effective, than other side-by-side vehicles on the market.

127.    Defendant BRP's representations regarding the character or quality of the subject side-by-side were untrue.  In addition, Defendant suppressed material information regarding the safety of the subject side-by-side, including the dangers known by Defendant to be associated with or caused by the use of the seat belt system in a subject side-by-side during a rollover accident.

128.    Defendant BRP negligently misrepresented or omitted information about the safety hazards of using a seat belt system in subject side-by-side during a rollover accident in its product

labeling, promotions and advertisements and instead labeled, promoted and advertised its products as safe and effective in order to avoid losses and sustain profits in its sales to consumers.

129.    In supplying the false information, Defendant BRP failed to exercise reasonable care or competence in obtaining or communicating information to their intended recipients, including Plaintiff.

130.    Plaintiff reasonably relied to Plaintiff's detriment upon Defendant BRP's misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product.   Plaintiff reasonably relied upon Defendant's representations to Plaintiff that the subject side-by-side was safe for use and that Defendant's labeling, advertisements and promotions fully described all known risks of the product.

131.    As a direct and proximate result of Defendants' negligent in connection with the subject side-by-side, Plaintiffs have suffered and will continue to suffer: significant and permanent loss of important bodily function; permanent and significant scarring; aggravation or activation of an existing disease or physical defect; pain and suffering; disability; physical impairment; mental anguish and/or emotional distress; inconvenience; loss of capacity for the enjoyment of life; past and future medical expenses; and lost wages and future loss of earning capacity.

132.    As a result of their injuries, Plaintiffs seek compensatory damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

## COUNT XI: LOSS OF CONSORTIUM
### *Against Defendants BRP and Kings Bay Powersports*

133.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, all prior paragraphs in this Complaint.

134.    At all relevant times in this lawsuit, Plaintiffs Wade Hicks and Erin Hicks were married, and they continue to be married.

135.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff Erin Hicks has suffered and will continue to suffer damages, including and not limited to, loss of help in raising children, loss of help in completing household chores, disruption of companionship and friendship with a spouse, loss of a sexual relationship, mental pain and suffering, and emotional distress.

136.    As a result of their injuries, Plaintiffs seek compensatory damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

### COUNT XII: VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA"), § 501.201 ET SEQ
#### *Against Defendants BRP and Kings Bay Powersports*

137.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, all prior paragraphs in this Complaint.

138.    Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States including the state of Florida.

139.    Defendants engaged in trade and commerce with respect to the design, manufacture, approval, marketing, promotion, distribution, and sale of the subject side-by-side, which was unfit for its intended use, and which had risks that substantially outweighed any benefits.

140.    Defendants, in furtherance of their business of trade and commerce, did knowingly and willfully fail to disclose to Plaintiff, information about the risks associated with the subject side-by-side.

141.    The Defendants made misleading statements and failed to disclose information to Plaintiff concerning the subject side-by-side in their marketing, promotion, distribution, and sale.

142.    The Defendants knew the facts concerning the subject side-by-side were material to Plaintiff in assessing the safety of the subject side-by-side.  Defendants also knew that withholding this information would place Plaintiff at further risk of injury.

143.    Defendants made these misrepresentations and failed to disclose material facts for the purpose of inducing Plaintiff to be exposed to safety hazards of the subject side-by-side.

144.    Plaintiff relied to his detriment on the Defendants' representations that the subject side-by-side was safe.

145.    As a direct and proximate result of Defendants' violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201 et seq, in connection with the subject side-by-side, Plaintiffs have suffered and will continue to suffer: significant and permanent loss of important bodily function; permanent and significant scarring; aggravation or activation of an existing disease or physical defect; pain and suffering; disability; physical impairment; mental anguish and/or emotional distress; inconvenience; loss of capacity for the enjoyment of life; past and future medical expenses; and lost wages and future loss of earning capacity.

146.    As a result of their injuries, Plaintiffs seek compensatory damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs, as well as attorney's fees and court costs as provided in § 501.2105.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a)    compensatory damages in an amount to be determined at trial;

b)    punitive damages;

c)    reasonable attorneys' fees and costs; and/or

d)    such other and further relief as this Court shall deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

Dated: June 20, 2022

Respectfully Submitted,

 /s/  *Jesse N. Bernheim*
JESSE N. BERNHEIM
Florida Bar No. 525421
*Attorneys for Plaintiffs*
BERNHEIM KELLEY BATTISTA & BLISS, LLC
110 SE 6th Street, Suite 1719
Fort Lauderdale, FL 33301
Tel:  (954) 866-1111
Fax:  (954) 252-2060
E-Mail:  JBernheim@realjustice.com