UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-61176-RAR

WADE HICKS, *et al.*,

      Plaintiffs,

v.

BOMBARDIER RECREATIONAL
PRODUCTS INC., *et al.*,

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**THIS CAUSE** is before the Court on Defendants' Motions to Dismiss Plaintiffs' First Amended Complaint ("Am. Compl."), [ECF No. 18]. Each Defendant filed their own Motion. *See* Bombardier Recreational Products' Motion to Dismiss ("BRP Mot."), [ECF No. 20]; Kings Bay Powersports' Motion to Dismiss ("KBP Mot."), [ECF No. 21]. Plaintiffs have responded to each Motion. *See* Response to BRP Mot., [ECF No. 22]; Response to KBP Mot., [ECF No. 24]. Each Defendant filed a reply. *See* BRP Reply, [ECF No. 25]; KBP Reply, [ECF No. 26]. The Court having carefully considered the relevant submissions and applicable law, it is hereby

**ORDERED AND ADJUDGED** that Defendant Bombardier Recreational Products Inc.'s ("Bombardier" or "BRP") Motion to Dismiss is **GRANTED IN PART**, and Defendant Kings Bay Powersports' ("Kings Bay" or "KBP") Motion to Dismiss is **GRANTED IN PART.** Counts VI, VIII, and XII are **DISMISSED** for the reasons set forth within.

## BACKGROUND

Plaintiffs Wade and Erin Hicks (husband and wife) and Plaintiffs Lily, Hunter, and Owen Hicks (children of Plaintiffs Wade and Erin Hicks) bring this action against Defendants

Bombardier Recreational Products, Inc. and Kings Bay Powersports.  Am. Compl. at 1.  Plaintiffs are citizens of Florida.  *Id.* ¶ 10.  Bombardier is a foreign for-profit corporation organized under the laws of Canada, headquartered in Quebec, Canada.  *Id.* ¶ 11.  Kings Bay is a business located in Kingsland, Georgia, approximately six miles north of the Georgia/Florida border.  *Id.* ¶ 13.

On August 18, 2020, Defendant Kings Bay sold a 2019 Can-Am Maverick Sport DPS side-by-side vehicle ("Vehicle") to a non-party, Carrie Brewster, in Kingsland, Georgia, for use by Plaintiffs Wade Hicks and Erin Hicks.  *Id.* ¶ 19.  This case arises from Plaintiff Wade Hicks' rollover incident while operating the Vehicle designed and manufactured by Defendant Bombardier.  *Id.* ¶ 2.

Plaintiffs contend that on October 31, 2020, Plaintiff Wade Hicks "properly used the seatbelt in the [Vehicle], the seatbelt did not adequately restrain him, and he was seriously injured during the rollover accident."  *Id.* ¶ 3.  Plaintiffs state that as the Vehicle tipped over, Wade Hicks' "seatbelt became loose such that it failed to restrain Plaintiff, and Plaintiff's head and right shoulder contacted the [Vehicle].  Plaintiff [Wade Hicks] suffered excruciating physical pain as a result of the impact."  *Id.* ¶ 24.  Wade Hicks' "wife Erin Hicks, his mother-in-law Carrie Brewster, and his two children Lily and Hunter Hicks were present and witnessed the accident."  *Id.* ¶ 25.  Though Carrie Brewster purchased the vehicle and witnessed the incident, she is not a party to this action.

Shortly after the incident, "Plaintiff was treated for a laceration of the scalp and was later diagnosed with an AC joint separation," which required reconstruction surgery.  *Id.* ¶¶ 26, 27.  Plaintiffs further allege that "[f]ollowing the accident, Plaintiff has not regained the full use of his shoulder, and his physical abilities are severely limited.  Plaintiff[] cannot perform many of the responsibilities related to his job that he was able to perform prior to the accident.  Plaintiff cannot

perform many of the household duties he was able to perform before the accident. Plaintiff's limited physical abilities have adversely impacted his relationships with his wife and his children." *Id.* ¶ 9.

Plaintiffs contend that the vehicle "presents a safety hazard and is unreasonably dangerous to consumers" because it includes a "3-point seatbelt" which "does not adequately restrain a driver, making it more likely that the driver will be seriously injured during a rollover accident, even when the seatbelt is properly used." *Id.* ¶ 5. Plaintiffs further contend that "alternative reasonable designs exist for the 3-point seatbelt" such as Bombardier's own 4-point harness which it advertises on its website. *Id.* ¶ 6. Customers have the option to add the 4-point seatbelt as an optional feature to the Vehicle. *Id.* ¶ 7. Plaintiffs allege that "even though the 4-point harness is an optional feature, Defendants know that the 4-point harness is safer than a 3-point seatbelt in that it is more likely to adequately restrain a driver" and Bombardier states on its website that "the 4-point harness absorbs additional energy in case of accident." *Id.*

Plaintiffs bring the following claims against both Defendants unless otherwise noted: (I) Failure to Warn (Strict Liability); (II) Design Defect (Strict Liability); (III) Manufacturing Defect (Strict Liability); (IV) Negligence; (V) Negligence for Permanent Injury to Parent; (VI) Breach of Implied Warranty of Merchantability Against Bombardier; (VII) Breach of Implied Warranty of Merchantability Against Kings Bay; (VIII) Breach of Implied Warranty of Fitness for a Particular Purpose Against Bombardier; (IX) Breach of Implied Warranty of Fitness for a Particular Purpose Against Kings Bay; (X) Negligent Misrepresentation against Bombardier; (XI) Loss of Consortium; and (XII) Violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

Defendants have each filed a Motion to Dismiss. Kings Bay argues that Plaintiffs fail to sufficiently allege personal jurisdiction over it; the Amended Complaint should be dismissed as a shotgun pleading; and Plaintiffs have failed to state a claim against Kings Bay with respect to Counts I, II, III, IV, V, VII, IX, XI, and XII. Kings Bay alternatively requests a more definite statement and maintains that Plaintiffs' claim for punitive damages and attorneys' fees should be stricken. *See generally* KBP Mot. Bombardier's Motion raises many of the same arguments, although Bombardier does not challenge personal jurisdiction or Counts VII and IX against Kings Bay. Bombardier further challenges the sufficiency of additional claims against it in Counts VI, VIII, and X. *See generally* BRP Mot. Together, Defendants challenge the sufficiency of every Count.

The Court will begin by addressing all applicable legal standards. Then, the Court will analyze Kings Bay's jurisdictional arguments. The Court will then turn to Defendants' argument that the Amended Complaint is a shotgun pleading, followed by Defendants' arguments that each Count fails to state a claim. Lastly, the Court will briefly address whether Plaintiffs' claims for punitive damages and attorneys' fees should be stricken.

## LEGAL STANDARD

### I. *Personal Jurisdiction*

To determine whether personal jurisdiction exists, a federal court sitting in diversity undertakes a two-step inquiry: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1363–64 (11th Cir. 2021) (quoting *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010)). "There are two types of personal jurisdiction: specific and general."

*Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990). "General personal jurisdiction is based on a defendant's substantial activity in [a state] without regard to where the cause of action arose," whereas "specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within [a state]." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citations omitted). To determine whether a cause of action "arises out of" or "is related to" a defendant's actions in a state, the court need not require "proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). However, "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.*

Where no evidentiary hearing is held on a motion to dismiss, "[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "A prima facie case of personal jurisdiction is established if Plaintiffs present 'enough evidence to withstand a motion for directed verdict.'" *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1139 (S.D. Fla. 2019) (quoting *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). "The Court must accept allegations as true, to the extent that they are uncontroverted by the Defendants' affidavits and depositions, and must construe all reasonable inferences in favor of the Plaintiffs." *Id.* A defendant challenging personal jurisdiction must present evidence to counter the plaintiffs' allegations. *See Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (noting that the defendant must "raise, through affidavits, documents or testimony, a meritorious challenge

to personal jurisdiction"). Once the defendant has presented sufficient evidence, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Id.*

As a general rule, courts should address jurisdictional issues, such as challenges to personal jurisdiction, before reaching the merits of a plaintiff's claims. *See, e.g.*, *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 941 (11th Cir. 1997). This is logical because "[a] court without personal jurisdiction is powerless to take further action." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).

## II. Shotgun Pleading

The Federal Rules of Civil Procedure provide, in pertinent part, that a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In addition, the complaint must specify the grounds for relief available to the moving party and state the facts supporting each ground for relief. *See* FED. R. CIV. P. 8.

The Eleventh Circuit has identified four rough types or categories of shotgun pleadings. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (citations omitted). "The most common" shotgun pleading is one "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. "The next most common type . . . is a complaint that [is] . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. "The third type of shotgun pleading is one that . . . [does] not separat[e] into a different count each cause of action or claim for relief." *Id.* at 1322–23. Lastly, "there is the relatively rare [shotgun pleading] asserting multiple claims against multiple defendants without specifying which of the

defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* The Eleventh Circuit has repeatedly condemned the use of shotgun pleadings for "imped[ing] the administration of the district courts' civil dockets." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010). The Eleventh Circuit has made clear that shotgun pleadings are an unacceptable form of establishing a claim for relief. *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295–96 (11th Cir. 2002).

### III. *Failure to State a Claim*

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiffs receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678.

A court considering a 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits—but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as

a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted).

## ANALYSIS

### I. *Personal Jurisdiction*

Defendant Kings Bay moves to dismiss the Amended Complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Kings Bay alleges that the Court lacks both general and specific personal jurisdiction because Kings Bay is a Georgia company, only located in Georgia, and the sale of the Vehicle occurred in Georgia. KBP Mot. at 6, 8. In support of its argument, Kings Bay offers an affidavit from John Bryan, the owner of Kings Bay Powersports. *Id.* at 2 (citing KBP Mot. Ex. 2, Amended Affidavit of John Bryan ("Bryan Affidavit")).[1] The Bryan Affidavit states that Kings Bay (1) "is a registered Domestic Profit Corporation in St. Mary's Georgia," (2) is "located at 1999 Commerce Drive in Kingsland, GA 31548" and "[t]here are no other locations of Kings Bay Powersports other than in Kingsland, Georgia," (3) "does not have any offices in Florida" and "does not conduct business transaction [sic] in the State of Florida," and (4) "has no assets or personnel in the State of Florida." Bryan Affidavit ¶¶ 2–7. The Bryan Affidavit additionally provides information about the Vehicle, confirming the same facts asserted in the Amended Complaint: (1) "Carrie Brewster purchased" and "took possession of" "a 2019 Can-Am Maverick Sport DPS side-by-side vehicle on August

---

[1] Kings Bay further explains that its name, as incorporated and identified on its 2019 Annual Registration, is Bro Bay, Inc. and that it does business as Kings Bay Powersports. John Bryan is the owner of Bro Bay, Inc. *See* KBP Mot. ¶¶ 7, 8 (citing KBP Ex. 1, 2019 Annual Registration).

18, 2020," and "[t]he transaction at issue in this case was conducted at 1999 Commerce Drive, Kingsland, Georgia." *Id.* ¶¶ 11–13.

But Plaintiffs do not base their personal jurisdiction allegations on Kings Bay's location. That is, Plaintiffs do not dispute that Kings Bay is a Georgia corporation, solely located in Georgia, and that the purchase of the Vehicle occurred in Georgia. Instead, Plaintiffs' basis for this Court's personal jurisdiction is Kings Bay's intentional contacts with the state of Florida, which Plaintiffs argue are related to this underlying case. Plaintiffs list multiple activities of Kings Bay which they contend warrant the exercise of personal jurisdiction. These activities include:

- KBP "promotes itself as a business that serves Florida residents" because it maintains a website and Facebook page which each state, "[w]e are the Honda® and BRP premier powersports dealer proudly serving S.E. Georgia & **N.E. Florida**." Am. Compl. ¶ 16(a) (citing Am. Compl. Ex. 1, About Kings Bay Webpage ("Webpage")) (emphasis added).

- KBP "uses its Florida resident customers to help it advertise the recreational vehicles it sells" by posting "photographs of each of its Florida resident customers—including Plaintiffs—alongside their recent vehicle purchases with a caption that includes their city of residence" to Kings Bay's Facebook page. "According to the captions, these customers hail from Florida cities that include Fernandina Beach, Jacksonville, Yulee, Hilliard, Waverly, Mayo, Orange Park, Hastings, Bryceville, Green Cove Springs, and Alma." *Id.* ¶ 16(b) (citing Am. Compl. Ex. 2, Kings Bay Facebook Photos).

- KBP "advertises its business and products on Florida radio stations. As one example, Kings Bay advertises on 104.5 WOKV FM, a radio station based in Jacksonville, Florida. Plaintiff Wade Hicks has heard Kings Bay's commercials on this radio station." *Id.* ¶ 16(c).

- KBP has sought "employees located in Florida. On the website jobsearcher.com, Kings Bay has posted job requisitions for a 'Motorcycle / ATC Service Advisor / Manager' in Jacksonville, Florida and a 'Motorcycle / ATC Service Advisor / Manager' in Yulee, Florida." *Id.* ¶ 16(d) (citing Am. Compl. Ex. 4, KBP Job Requisitions; Am. Compl. Ex. 5, Motorcycle/ATV Service Advisor/Manager Positions).

- KBP "offers extended warranty coverage on certain of its products for Florida residents. In one instance, Kings Bay states on its website: 'Florida residents receive 36 months BRP Limited Warranty.'" *Id.* ¶ 16(e) (citing Am. Compl. Ex. 6, Spyder Promotions).

- "Defendant Kings Bay is a BRP-recognized dealer of BRP products, including [Vehicle].  BRP indicates that a dealer may apply to be a BRP- recognized dealer in an 'Open Point,' *i.e.*, a location where 'BRP has the greatest need and opportunity for a new BRP dealership.'  Thus, Defendant Kings Bay and Defendant BRP have a relationship based in part on the geographic locations that Defendant Kings Bay serves, *i.e.*, Southeast Georgia and **Northeast Florida**."  *Id.* ¶ 16(f) (quoting Defendant Bombardier's webpage) (emphasis added).

- KBP "has availed itself of benefits associated with being a BRP-recognized dealer of BRP's Can-Am products in the Northeast Florida region" through Defendant BRP's advertisements of KBP "as the BRP-recognized dealer closest to the location of Yulee, Florida (Plaintiffs' city of residence)."  *Id.* ¶ 16(g) (citing Am. Compl. Ex. 7, Kings Bay on Bombardier's webpage).

- KBP "advertises on its website that it sells pre-owned recreational vehicles.  Based on information and belief, Defendant Kings Bay obtains some of its preowned inventory from Florida residents."  *Id.* ¶ 16(h).

Defendant Kings Bay, through the Bryan Affidavit, attempts to rebut some (but not all) of these points.  Specifically, the Bryan Affidavit states, "Kings Bay Powersports has never advertised on the radio out of Jacksonville, Florida" and "[t]he employment advertisements in the First Amended Complaint under footnote 8 are for job opportunities at the Kingsland, Georgia location and are not for jobs in the State of Florida."  Bryan Affidavit ¶¶ 9, 10.  Kings Bay does not rebut any of the other points through the Bryan Affidavit or otherwise.

In light of the facts presented by both parties, the Court finds that it may exercise personal jurisdiction over Kings Bay.  In reaching this conclusion, the Court first finds that Florida's long-arm statute reaches Kings Bay.  Next, the Court finds that the exercise of specific personal jurisdiction over Kings Bay comports with due process.[2]  The Court addresses each issue in turn.

---

[2] Because the Court finds specific personal jurisdiction exists, the Court need not address the parties' arguments regarding general personal jurisdiction, which is only found where a defendant is "at home" in the forum state.  *See Carmouche v. Tamborlee Management Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) ("[A] corporation's operations in a forum other than its formal place of incorporation or principal place of business will be so substantial and of such a nature as to render the corporation at home in that State only in exceptional cases.").

### A. *Florida's Long-arm Statute*

Florida law allows for personal jurisdiction over nonresident defendants who "commit a tortious act within" Florida.  Fla. Stat. § 48.193(1)(a)(2).  This provision of Florida's long-arm statute "permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (citing *Posner*, 178 F.3d at 1216); *see also Louis Vuitton*, 736 F.3d at 1353 ("[U]nder Florida law, a nonresident defendant commits a tortious act within [Florida] when he commits an act outside the state that causes injury within Florida.").

Here, Plaintiffs allege that Defendant Kings Bay committed torts founded in product liability law.  Plaintiffs bring strict liability failure to warn, design defect, and manufacturing defect claims (*see* Counts I, II, and III) and negligence claims (*see* Counts IV and V) against Kings Bay.  Kings Bay argues that any alleged actions it took in furtherance of these claims would have occurred in Georgia, not Florida.  KBP Mot. at 9.  But Plaintiffs allege that they live in Florida and their injuries occurred in Florida.  Am. Compl. ¶¶ 10, 17.  Accordingly, Plaintiffs have pled that Kings Bay committed a tort outside of Florida that allegedly caused injury to Plaintiffs within the state.  *See Louis Vuitton*, 736 F.3d at 1353 ("[A] nonresident defendant commits a tortious act within [Florida] when he commits an act outside the state that causes injury within Florida.").  This comports with the requirements of Florida's long-arm statute.[3]

### B. *Due Process*

"Even though a statute may permit a state to assert jurisdiction over a nonresident defendant, the due process clause of the United States Constitution protects an individual's liberty

---

[3] Plaintiffs also allege that two other portions of Florida's long-arm statute reach Kings Bay.  *See* Fla. Stat. § 48.193(1)(a)(1) and (6).  Because the Court finds § 48.193(1)(a)(2) applies to this case, it need not analyze whether multiple portions of the long-arm statute also apply.

interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Licciardello,* 544 F.3d at 1284 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)). Specific jurisdiction exists if the following three prongs are satisfied: (1) the plaintiff has established that his claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) the plaintiff has demonstrated that the defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of jurisdiction would not violate traditional notions of fair play and substantial justice. *Louis Vuitton,* 736 F.3d at 1355. "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id.* (quoting *Diamond Crystal,* 593 F.3d at 1267). Here, Plaintiffs have established the first two prongs of the Due Process test, and Defendants have failed to show that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.

### i.   *Arises out of or relates to*

Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *See Walden v. Fiore,* 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Mag., Inc.,* 465 U.S. 770, 775 (1984)) (cleaned up). This means that "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. Moreover, the location of a plaintiff's alleged injury cannot support specific jurisdiction on its own. *See id.* at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). "[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Fraser v. Smith,* 594 F.3d 842, 850 (11th Cir. 2010).

In determining whether a claim "arises out of or relates to" a defendant's contacts with the forum, the Supreme Court has explained that a "strict causal relationship between the defendant's in-state activity and the litigation" is not required and "we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor*, 141 S. Ct. at 1026.  As the Eleventh Circuit has recently stated, this "inquiry—whether the claims 'arise out of or relate to' one of the defendant's contacts—does not require direct causation.  Rather, it 'contemplates that some relationships will support jurisdiction without a causal showing.'" *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (quoting *Ford Motor*, 141 S. Ct. at 1026 (emphasis omitted) (citation omitted)).  "The focus must always be on the *nonresident defendant's* conduct, that is, whether the defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum." *Diamond Crystal*, 593 F.3d at 1268 (emphasis in original).

Here, Plaintiffs' claims arise out of or relate to Kings Bay's contacts with Florida.  Kings Bay's website and Facebook page expressly state that it is "proudly serving S.E. Georgia & N.E. Florida" and provide warranties on certain products specifically for Florida residents.  Am. Compl. ¶ 16(a) (citing Am. Comp. Ex. 1, Webpage); *id.* ¶ 16(e) (citing Am. Compl. Ex. 6, Spyder Promotions).  Kings Bay demonstrates its advertising to Florida residents is successful by posting photos of its Florida customers and their Florida hometowns on its Facebook page.  *Id.* ¶ 16(b) (citing Am. Compl. Ex. 2, Facebook Photos).  In fact, Kings Bay posted a photo of Carrie Brewster and Plaintiffs purchasing the Vehicle from Kings Bay.  *Id.*  The Facebook post is captioned, "Carrie Brewster, of Yulee, with her new 2020 Honda Recon! Thanks for choosing #KingsBayPowersports!!"  *Id.*  Kings Bay used this photo, and others, presumably to attract more

Florida customers.  Kings Bay's contacts with Florida—including its active marketing to the Northeast Florida region—is directly related to the purchase of the Vehicle.

Kings Bay argues that Plaintiffs have not made a causal showing between Kings Bay's actions and the underlying claim.  But the Supreme Court has made clear that causation is not required for the "relatedness" prong to be met.  *Ford Motor*, 141 S. Ct. at 1026; *see also Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1276 (11th Cir. 2022) ("[D]irect causation between the nonresident's forum contacts and the plaintiff's cause of action is not required."); *SkyHop Techs*, 58 F.4th at 1229 ("The first inquiry—whether the claims "arise out of or relate to" one of the defendant's contacts—does not require direct causation.").  In light of *Ford* and its progeny, the Court finds the facts alleged here do not support causation—but *do* support the "relatedness" component of the prong, which is itself sufficient.  Thus, the "arises out of *or related to*" prong is satisfied.

### ii.  Purposeful availment

For the Court to find specific personal jurisdiction, Kings Bay must have taken "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum State."  *Ford Motor*, 141 S. Ct. at 1024–25 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  "The contacts must be the defendant's own choice and not "'random, isolated, or fortuitous.'"  *Id.* at 1015 (quoting *Keeton*, 465 U.S. at 774).  "These rules derive from and reflect two sets of values—treating defendants fairly and protecting 'interstate federalism.'"  *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)).  Defendants are thus provided with "fair warning"—knowledge that "a particular activity may subject [it] to the jurisdiction of a foreign sovereign."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Defendant Kings Bay argues it does not operate its business in Florida and therefore has not availed itself of the benefits of doing business in Florida. *See* KBP Mot. at 9. However, the Court finds that Plaintiffs' list of eight specific actions Kings Bay has taken to avail itself of the benefits of doing business with Floridians suggests otherwise. Kings Bay advertises on its website and Facebook page that it serves Northeast Florida—and posts pictures of their Florida customers on their Facebook page identifying where in Florida the customers are from. Am. Compl. ¶ 16. Plaintiffs also allege that Kings Bay advertises on Florida radio, seeks employees from Florida, offers warranties specific to Florida residents, and is recognized by Defendant Bombardier as the dealer of Bombardier's products for Northeast Florida. *Id.*

The sworn affidavit submitted by Kings Bay does not alter this analysis. The Bryan Affidavit makes only a single assertion about advertising, stating that Kings Bay "has never advertised on the radio out of Jacksonville, Florida." Bryan Affidavit ¶ 9. As Plaintiffs point out, "[i]t is unclear exactly what Kings Bay intends to mean by the phrase 'out of' Jacksonville, but it appears as if that artful wording is intended to mean that Kings Bay has never broadcast a message that emanated from Jacksonville. But the source of the message is far less important than the reach and the target audience." Resp. to KBP Mot. at 8. Ultimately, Kings Bay's response to the radio advertisement point is vague and insufficient. More importantly, Kings Bay does not attempt to rebut the remaining allegations regarding its continuous and purposeful contacts with Florida, such as its marketing to Northeast Florida customers on its website, posting photos and descriptions of Florida customers on Facebook, and serving as Bombardier's primary retailer in Northeast Florida. Consequently, the Court finds that Plaintiffs have sufficiently pled the purposeful availment prong, and Kings Bay has failed to rebut Plaintiffs' allegations.

### iii. *Traditional notions of fair play and substantial justice*

Since Plaintiffs have established the first two prongs of the due process test for specific jurisdiction, Kings Bay must demonstrate that this Court's exercise of personal jurisdiction over it violates "traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355. Even where a defendant has purposefully established constitutionally significant contacts within a forum state, jurisdiction must also be evaluated in light of several other factors to determine whether its exercise would comport with "fair play and substantial justice." *International Shoe*, 326 U.S. at 320. "These factors include the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Licciardello*, 544 F.3d at 1284 (citing *World–Wide Volkswagen*, 444 U.S. at 292). "Where these factors do not militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise." *Id.*

Defendant Kings Bay fails to meet its burden to demonstrate that the Court's exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice. In fact, Kings Bay does not advance any arguments regarding the fair play and substantial justice factors in its Motion or Reply. Plaintiffs, nevertheless, make the following arguments: (1) any burden to Kings Bay to litigate in Florida is minimal because it is located only six miles north of the Florida border; (2) Florida has an interest in adjudicating this dispute, because Plaintiffs are Florida residents, the injury in question occurred in Florida, and Kings Bay has targeted Florida residents and derived significant pecuniary benefit from Florida residents, including Plaintiffs; and (3) Plaintiffs' interest in obtaining relief is met in a Florida court because Plaintiffs are located here. Resp. to KBP Mot. at 14. Plaintiffs further argue that Kings Bay should have reasonably anticipated being haled into a Florida court because Kings Bay targets sales to Florida residents

and at the time of the sale of the Vehicle, Kings Bay knew Carrie Brewster and Plaintiffs were Florida residents.  *Id.* at 14–15.

Based on the foregoing analysis, the Court concludes it has specific personal jurisdiction over Defendant Kings Bay because (1) Plaintiffs have established that their claims "arise out of or relate to" at least one of Defendant's contacts with the forum, namely Kings Bay's advertising activities to Florida customers; (2) Plaintiffs have demonstrated that Defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of jurisdiction would not violate traditional notions of fair play and substantial justice.  *See Louis Vuitton*, 736 F.3d at 1355.  Accordingly, the Court denies Defendant Kings Bay's Motion to Dismiss for Lack of Personal Jurisdiction.

## II.  *Shotgun Pleading*

Defendants Bombardier and Kings Bay argue that the Amended Complaint is a "shotgun pleading" because it is "replete with conclusory, vague and immaterial facts not connected with a cause of action."  BRP Mot. at 6; KBP Mot. at 10 (citing *Weiland*, 792 F.3d at 1323 (describing the second of four types of shotgun pleadings recognized in the Eleventh Circuit)).  Defendants fault the Amended Complaint for including fact sections titled "Side-by-side Vehicles" and "BRP's Design of the 2019 Can-Am Maverick Sport DSP and Accompanying Warnings."  Am. Compl. ¶¶ 30–46.  Defendants ask the Court to dismiss the Amended Complaint, or in the alternative, require a more specific statement.  BRP Mot. at 17; KBP Mot. at 17.

The Court does not find these sections of the Amended Complaint to be "conclusory," "vague," or "immaterial."  *Weiland*, 792 F.3d at 1323.  As Plaintiffs properly point out, the two fact sections Defendants identify deal with the Vehicle at issue, its Operator Guide, and Bombardier's website.  They provide critical background for the claims at issue in this case.  Resp.

to BRP Mot. at 4.  The Court agrees with Plaintiffs that these sections provide general background regarding Bombardier's representations about the Vehicle's safety.  *Id.*  This is far from the type of pleading addressed in *Weiland*.  *Weiland*, 792 F.3d at 1325 (holding that dismissal of a complaint should be reserved for cases "where it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief").

Kings Bay additionally argues that the Amended Complaint is a shotgun pleading because it lumps together both Defendants in Counts I to V and Count IV "fails to delineate the separate negligence of Kings Bay."  KBR Mot. at 10.  The Court also finds this argument unpersuasive. The Eleventh Circuit has identified a "relatively rare" form of a shotgun pleading in which a complaint asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  *Weiland*, 792 F.3d at 1323.  But that is not the case here.  The Amended Complaint sufficiently describes which causes of action apply to each Defendant.  Indeed, throughout Counts I through V, the Amended Complaint makes clear which allegations apply to both Defendants rather than only one Defendant.  *See, e.g.*, Am. Compl. ¶ 68 ("At all times relevant herein, Defendant BRP manufactured the [Vehicle] and its driver's seatbelt system and each Defendant owed Plaintiff a duty of reasonable care....").  As such, the Court will not dismiss the Amended Complaint or require more specificity, given that it is clear as currently pled.

### III.  Failure to State a Claim

Together, Defendants challenge all twelve Counts in the Amended Complaint.  The Court addresses each argument in turn.

### A.   Count I – Failure to Warn (Strict Liability)

Both Defendants argue that Count I of the Amended Complaint fails to state a claim for strict liability for failure to warn.  Defendant Bombardier argues that Count I fails because the actual warnings it provided contradict Plaintiffs' allegations.  BRP Mot. at 7.  Kings Bay argues the Amended Complaint does not allege any facts as to the content of the warnings nor what, if any, warnings Plaintiff Wade Hicks received, since he did not personally purchase the vehicle. KBP Mot. at 11.

The Court, however, agrees with Plaintiffs that Count I, alleging strict liability for failure to warn, is well-pled.  To state a cause of action for strict liability, a plaintiff must plead "(1) the manufacturer's relationship to the product in question, (2) the unreasonably dangerous condition of the product, and (3) the existence of a proximate causal connection between the condition of the product and the plaintiff's injury."  *Gomez v. Pfizer, Inc.*, 675 F. Supp. 2d 1159, 1163 (S.D. Fla. 2009).  Plaintiffs have done so.

First, Plaintiffs plead the manufacturer's relationship with the product, alleging, "Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the subject side-by-side, and in the course of the same, directly promoted or marketed the [Vehicle] to consumers or persons responsible for consumers…."  Am. Compl. ¶ 48.  Moreover, throughout the Amended Complaint, Plaintiffs make clear that Defendant Bombardier is the manufacturer of the product, while Defendant Kings Bay was the retailer, further clarifying each party's relationship to the product. *E.g.*, *id.* ¶¶ 12, 16, 19.  This is sufficient to meet the first requirement.

Second, Plaintiffs have sufficiently pled the unreasonably dangerous condition of the product, namely, that it failed to warn of dangers associated with the seatbelt.  The Amended Complaint states,

> The subject side-by-side was defective and unreasonably dangerous when it left the possession of Defendants in that the Can-Am Maverick Sport DPS contained warnings and directions which were misleading and were inadequate and insufficient to alert consumers, such as Plaintiff, to the dangerous risks and reactions associated with the Can-Am Maverick Sport DPS, including the risk of the 3-point seatbelt not properly restraining a driver in the instance of a rollover accident.

> The subject side-by-side was unreasonably dangerous such that its 3-point seatbelt loosened and failed to restrain Plaintiff during Plaintiff's rollover accident.

*Id.* ¶¶ 49–50.  These paragraphs sufficiently put Defendants on notice as to what is purportedly defective about the product.  This is particularly apparent when compared to other strict liability claims that courts in this district have found to be insufficient.  For example, in *Gomez*, the court dismissed strict liability claims against two pharmaceutical companies because there were no "factual allegations to put the Defendants on notice as to what *products* Plaintiffs are claiming were defective" and "Plaintiffs' theory of strict liability—whether defective design, manufacture, or failure to warn—[was] not clear from the Complaint."  675 F. Supp. 2d at 1163 (emphasis in original).  In contrast, here the Amended Complaint identifies the specific product, the theory of liability, and otherwise puts Defendants on notice as to why Plaintiffs believe the product is unreasonably dangerous.

Third, Plaintiffs sufficiently identify the existence of a proximate causal connection between the condition of the product and Plaintiff Wade Hicks' injury.  The Amended Complaint states,

> As a direct and proximate result of Defendants' failure to warn about the risks of the subject side-by-side, Plaintiff has suffered and will continue to suffer: significant and permanent loss of important bodily function; permanent and significant scarring; aggravation or activation of an existing disease or physical defect; pain and suffering; disability; physical impairment; mental anguish and/or emotional distress; inconvenience; loss of capacity for the enjoyment of life; past and future medical expenses; and lost wages and future loss of earning capacity.

Am. Compl. ¶ 50.  This paragraph sufficiently connects the defect to Plaintiff Wade Hicks' injuries, such that it properly alleges proximate causation.  Accordingly, the Motion is denied as to Count I.

### B.  Counts II and III – Design and Manufacturing Defects (Strict Liability)

Defendants argue that Counts II and III, alleging strict liability for design and manufacturing defects respectively, fail because the Amended Complaint does not adequately plead the product's defect nor proximate cause.  BRP Mot. at 8; KBP Mot. at 11.  Defendants rely on *Bequette v. Black & Decker*, No. 07-21609, 2007 WL 9702723, at *2 (S.D. Fla. Aug. 1, 2007), in support of this proposition.  There, the court dismissed strict liability manufacturing and design defect claims because the complaint only included conclusory allegations that the product at issue was defective, unreasonably dangerous, and malfunctioned or broke during normal use, which the court held insufficient to allege a design or manufacturing defect.  *Id.*  Plaintiffs respond by invoking this Court's opinion in *Dye v. Covidien LP*, which ultimately concluded, "[i]t would be unreasonable for the Court to require Plaintiff to plead exactly *how* the implanted Product is defective and *how* it caused his alleged injuries when Plaintiff has not yet been afforded discovery or the benefit of expert testimony."  470 F. Supp. 3d 1329, 1336 (S.D. Fla. 2020) (emphasis in original).

The Court concludes that the pleadings are sufficient here.  As in *Dye*, Plaintiffs have pled enough non-conclusory facts to meet their pleading requirements at this stage with respect to specific defect and proximate causation.  *See id.*  The Court reaches this conclusion, in part, by comparing the Amended Complaint to the complaint in *Bequette*.  In *Bequette*, the complaint alleged that Plaintiff was "'using DW8725 Dewalt cutting discs manufactured and/or distributed by Black & Decker for the purpose of scrapping metal' with his hand grinder."  2007 WL 9702723, at *1 (quoting complaint).  Further, "[w]hile he was using the grinder, Bequette allege[d], one of the cutting discs broke with such force that he lost control of the hand grinder, sending it disc-first into the top of his foot and injuring him."  *Id.*  "In his strict liability claim . . . Bequette allege[d], [] that 'the cutting disc as manufactured, sold, and/or distributed by Defendant, BLACK & DECKER, was in a defective condition and unreasonably dangerous to the foreseeable user in that the cutting disc broke and sliced through the Plaintiff['s] . . . foot.'"  *Id.* (quoting complaint).

Based on these allegations, the district court concluded, "Bequette has failed to specify whether the alleged defect in Black & Decker's product resulted from the product's design or the manufacturing process, and he has failed to allege any facts regarding how the product was defective."  *Id.* at *3.  The court further stated, "[i]t is unclear whether Bequette intends to assert his claim based on a design defect or a manufacturing defect theory and what the specific defect was."  *Id.*  Additionally, "[s]imply alleging that the product was 'defective' or that a defect was present is insufficient to place Black & Decker on notice of the claims against it, notwithstanding the low threshold required by Federal Rule of Civil Procedure 8(a)."  *Id.*

Here, Plaintiffs plead more facts than in *Bequette*.  The Amended Complaint does not simply state that the Vehicle is defective.  Rather, it identifies the seatbelt as the defective part of the Vehicle and explains *how* it was defective, namely, it loosened when the Vehicle rolled over,

failing to secure Plaintiff in the Vehicle.  Am. Compl. ¶ 61 ("The [Vehicle] was unreasonably dangerous such that its 3-point seatbelt loosened and failed to restrain Plaintiff during Plaintiff's rollover accident."); *id.* ¶ 63 ("Defendants know that the optional 4-point harness is safer than the included 3-point seatbelt in that the 4-point harness is more likely than a 3-point seatbelt to adequately restrain a driver.").  Additionally, unlike the complaint in *Bequette*, Plaintiffs here separate their manufacturing and design defect claims into separate counts, putting Defendants on notice as to what theories of liability Plaintiffs are pursuing.  *Compare* Am. Compl. at 19, 21, *with Bequette*, 2007 WL 9702723, at *3.

The Court also concludes that Plaintiffs have adequately pled proximate causation with respect to their manufacturing and design defect claims.  In Count II, alleging design defect, the Amended Complaint states,

> As a direct and proximate result of Defendants' defective design of the subject side-by-side, Plaintiff has suffered and will continue to suffer: significant and permanent loss of important bodily function; permanent and significant scarring; aggravation or activation of an existing disease or physical defect; pain and suffering; disability; physical impairment; mental anguish and/or emotional distress; inconvenience; loss of capacity for the enjoyment of life; past and future medical expenses; and lost wages and future loss of earning capacity.

Am. Compl. ¶ 64.  The Amended Complaint includes a similarly sufficient paragraph with respect to the manufacturing defect claim.  *See id.* ¶ 72.  Defendants argue that "Plaintiffs' legal conclusion that an <u>unspecified</u> component of the seatbelt 'loosened' to an <u>unspecified</u> extent, even if proven, <u>could never establish proximate causation if Plaintiff's injuries would have occurred regardless</u>— a risk that BRP warns is present in a rollover even with a properly functioning seatbelt."  BRP Reply at 3–4 (underlining in original).  While Defendants' argument may ultimately prove to be

true, it addresses whether the evidence will show proximate causation existed, not whether Plaintiffs have adequately pled causation. And this can only be determined through discovery.

Likewise, Defendants disagree with Plaintiffs that Plaintiff Wade Hick's body "impacted the *ground* and/or parts of the vehicle." BRP Reply at 4, n.3 (quoting Resp. to BRP Mot. at 11). The Court agrees with Defendants that the allegation that Plaintiff Wade Hick's body hit the *ground* rather than the *vehicle* is not contained in the Amended Complaint. Defendants argue that because of this, Plaintiff's pleadings are "factually inconsistent." *Id.* Specifically, Bombardier states,

> Plaintiffs allege that the Vehicle tipped onto its right side [DE 18, ¶23], and that W.H.'s right shoulder contacted the side-by-side. [DE 18, ¶24]. The driver's seat is on the left side of the Vehicle. [DE 18, ¶20]. W.H. could not have impacted the ground from the left side unless the seatbelt completely broke or detached. Plaintiffs alleged that the seatbelt "became loose," not that it broke or detached. [DE 18, ¶24].

*Id.* (citations in original). However, given that the Amended Complaint contains no allegation that Plaintiff Wade Hicks' body hit the ground—as Defendants themselves point out—the Court concludes that the Amended Complaint does not contain factual inconsistencies that would require dismissal of these counts. If there are any inconsistencies in Plaintiffs' sworn testimony regarding the rollover incident and Plaintiffs' injuries, that will be a factual inquiry appropriate for the factfinder to consider. At this stage, however, the Court finds that Plaintiffs have provided Defendants with sufficient facts in their Amended Complaint to allege proximate causation. Accordingly, the Court will not dismiss Counts II and III for failure to state a claim.

### C. Count IV – Negligence

Plaintiffs bring a claim of negligence against both Bombardier and Kings Bay. Am. Compl. at 23. The Amended Complaint states, "Defendants directly or indirectly negligently

manufactured, designed, tested, researched and developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold the Can-Am Maverick Sport DPS across the United States and in the state of Florida." *Id.* ¶ 23.

Defendant Kings Bay moves to dismiss Plaintiffs' negligence claims against it, arguing "[t]he allegations of negligence deal directly with the design and manufacturing of the vehicle and do not allege any facts as to how Kings Bay was negligent" in its role as "the dealer who sold the vehicle to Carrie Brewster." KBP Mot. at 13. The thrust of Kings Bay's argument is that the specific instances of the alleged breach of duty are acts that can only be taken by the manufacturer, not the retailer, Kings Bay. *Id.* Defendant Bombardier, in contrast, argues the negligence claim against it should be dismissed because it takes a "kitchen sink" approach by which Plaintiffs "list[] every legal theory on which they suppose they could possibly prove BRP was negligent in some way." BRP Mot. at 11–12.

The Amended Complaint alleges that both Defendants "breached their duty and were negligent" in the following ways:

> a. *failing to test and inspect* the subject side-by-side in a reasonable manner in order to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured, labeled, and sold;
>
> b. *failing to utilize and implement a reasonably safe design* in the manufacture of the subject side-by-side;
>
> c. *failing to manufacture* the subject side-by-side in a reasonably safe condition;
>
> d. *failing to label* the subject side-by-side so as to warn the Plaintiff of the danger of not being adequately restrained by a seatbelt during a rollover accident; and
>
> e. *manufacturing* the subject side-by-side, which is an unreasonably dangerous side-by-side vehicle when used as instructed.

Am. Compl. ¶ 77 (emphasis added).  The negligence claim does not expressly state whether the theory of negligence is based on design defect, manufacturing defect, failure to warn, or a combination of these theories, as the strict liability claims in Counts I, II, and III do.

The Court finds that at the pleading stage, the Amended Complaint is sufficient to survive both Defendants' Motions to Dismiss.  "In the context of products liability, the basic elements of a negligence cause of action apply: (1) duty of care toward the plaintiff; (2) breach of that duty (or negligence); (3) proximate cause," and (4) "the product was defective or unreasonably dangerous." *Marzullo v. Crosman Corp.*, 289 F. Supp. 2d 1337, 1342 (M.D. Fla. 2003) (analyzing a design-defect claim under Florida law); *see Valencia v. Sanborn Mfg. Co., Inc.*, No. 04-21416, 2005 WL 5957819, at *12 (S.D. Fla. Aug. 11, 2015) (reciting these elements and stating that a "product may be defective by virtue of a design defect, manufacturing defect, or inadequate warning").  The Court will address Defendants' arguments with respect to each element.

Kings Bay first takes issue with the second requirement, breach of duty or negligence. However, Plaintiffs have properly pled breach of duty.  Kings Bay argues that "the allegations of negligence deal directly with the design and manufacturing of the vehicle and do not allege any facts as to how Kings Bay was negligent[.]"  KBP Mot. at 13.  Accordingly, Kings Bay argues, Plaintiffs' breach of duty allegations cannot apply to Kings Bay, as the retailer that played no role in the design or manufacturing of the vehicle.  But under Florida law, a consumer may bring a product liability negligence claim against a retailer, so long as the consumer alleges and proves fault. *Trophia v. Camping World, Inc.*, 616 F. Supp. 3d 1305, 1315 (M.D. Fla. 2022) (citing *Carter v. Hector Supply Co.*, 128 So. 2d 390, 393 (Fla. 1961)).  Indeed, in *Carter*, the Florida Supreme Court explained that in a negligence action, "it would be necessary [] to prove that the retailer knew, or should have known, of the defective condition of the commodity."  128 So. 2d at 392.

Here, Plaintiffs allege within Count IV that "Defendants knew or should have known that the [Vehicle] had unreasonably dangerous risks of which Plaintiff would not be aware."  Am. Compl. ¶ 80.   Additionally, contrary to the arguments made by Kings Bay, the five alleged breaches indicate that Plaintiffs' negligence claim rests on all three product liability theories, not just design and manufacturing defects.  First, under Florida law, there is no separate duty for testing and inspecting, as alleged in letter *a*, because it is part of the manufacturer's duty to design a product with reasonable care; thus, it is subsumed in claims for defective design and failure to warn.  *See Hall v. Sunjoy Indus. Grp., Inc.*, 764 F. Supp. 2d 1297, 1302 (M.D. Fla. 2011) (citing *Adams v. G.D. Searle & Co., Inc.*, 576 So. 2d 728, 730–31 (Fla. 2d DCA 1991)).  Letter *b* alleges negligent design.  Letters *c* and *e* allege negligent manufacturing.  And lastly, letter *d* appears to allege failure to warn, although it uses the term "failing to label" instead of "warn."  *See* Am. Compl. ¶ 77.  Accordingly, Plaintiffs have sufficiently pled an appropriate theory of breach of duty or negligence against Kings Bay as a retailer because the Amended Complaint encompasses all three theories of liability and includes an allegation of actual or constructive knowledge.

Next, Kings Bay, in one sentence, also takes issue with Plaintiffs' pleading of proximate cause.  Kings Bay states, "without any allegations as to how the 3-point seatbelt failed, and without any facts or allegations showing how the failure to inspect the [Vehicle] caused the injury, the Plaintiffs have failed to establish that the defect is the proximate cause of the injury."  KBP Mot. at 13.  But the Amended Complaint alleges that the 3-point seatbelt "does not adequately restrain a driver" and that it "loosened and failed to restrain Plaintiff."  Am. Compl. ¶¶ 78, 79.  These alleged facts, combined with the allegation that Plaintiffs' injuries were "a direct and proximate result of Defendants' negligent acts and omissions in connection with the [Vehicle]," *id.* ¶ 81, are sufficient to allege proximate cause.

Lastly, Defendant Bombardier argues that "Count IV does not contain a single fact to support any of the[] legal theories, leaving the Court 'the onerous task of sifting out irrelevancies in order to decide for itself which facts are relevant to the [cause of action] asserted.'"  BRP Mot. at 11–12 (quoting *Strategic Income Fund*, 305 F.3d at 1296).  While the Court agrees with Bombardier's observation that the paragraphs contained within Count IV are light on facts, the Court also notes that four of the five stated legal theories assert Defendants' *failures* to take certain actions, rather than affirmative acts Defendants have taken.  Moreover, the factual background sections of the Amended Complaint, which are incorporated into Count IV, sufficiently provide Defendants with the information needed to understand Plaintiffs' negligence claim.  Accordingly, the Court will not dismiss Count IV for failure to state a claim.

### D. Counts VI, VII, VIII, and IX – Implied Warranties of Merchantability and Fitness for a Particular Service

Plaintiffs allege that Defendants breached the implied warranties of merchantability and fitness for a particular service.  Am Compl. at 26–32.  Defendants argue that Plaintiffs' claims fail to allege contractual privity, as required by Florida law.  Here, Defendant Bombardier, as the manufacturer, is correct regarding the claims against it, but Defendant Kings Bay, as the retailer, is not.

To state a legally cognizable claim for breach of implied warranty of merchantability (Fla. Stat. § 672.314) or breach of the implied warranty of fitness for a particular purpose (Fla. Stat. § 672.315), Plaintiffs must first allege that they had direct contractual privity with Defendants.  *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1223 (S.D. Fla. 2017).  The Florida Supreme Court has held that implied-warranty claims require a contractual relationship to meet the privity requirement.  *See David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1323 (S.D. Fla. 2009) (quoting *West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80, 91 (Fla. 1976)).  Under Florida law, implied

warranty claims cannot be maintained against a manufacturer for a product that was purchased from a dealer. *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1184 (N.D. Fla. 2007); *Powers v. Lazy Days RV Ctr., Inc.*, No. 8:05–CV–1542T17EAJ, 2006 WL 373011, at *2 (M.D. Fla. Feb. 16, 2006) (dismissing claims against recreational vehicle manufacturer based on implied warranty where there was no privity of contract). Where Plaintiffs' factual allegations demonstrate conclusively that there was no privity between Plaintiffs and Defendants, both implied-warranty claims fail as a matter of law, and any amendment would be futile. *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1119 (S.D. Fla. 2019).

While the Amended Complaint alleges that Plaintiffs were in privity with both Defendants, the other alleged facts do not support this legal conclusion. For example, Plaintiffs' claim alleging breach of the implied warranty of merchantability against Defendant Bombardier states, "BRP was in privity with Plaintiff because Plaintiff [] was a foreseeable and intended user of the [Vehicle] and the beneficiary of warranties relating to the [Vehicle]" and "Plaintiffs were in contractual privity with BRP at the time of the rollover accident, as the [Vehicle] was subject to BRP's limited warranty covering newly purchased vehicles." Am. Compl. ¶¶ 96, 97. However, Bombardier's limited warranty does not support claims for breaches of *implied* warranties. A manufacturer's express warranty may only give rise to a claim for breach of that *express* warranty. *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005).

Plaintiffs ask the Court to follow the Eleventh Circuit's opinion in *Global Quest v. Horizon Yachts* and find that there remains an issue of fact as to the express warranty covering newly purchased vehicles that Bombardier issued to Plaintiffs. Resp. to BRP Mot. at 15–16 (citing *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1032 (11th Cir. 2017)). But as Defendant Bombardier points out, the facts of *Global Quest* are inapposite. Plaintiffs' citation to *Global*

*Quest* omits the dispositive fact on which the court based its holding—the CEO of the defendant manufacturer directly negotiated a warranty with the buyer. *Glob. Quest*, 849 F.3d at 1032. Additionally, there was an open question of who issued the warranty among the three named defendants. *Id.* That is not the case here. Plaintiffs' Amended Complaint leaves no such question open. Bombardier issued an express warranty. Am. Compl. ¶ 97. And Florida law is clear that such a warranty does not constitute privity in support of claims for breach of implied warranties. *Mesa*, 904 So. 2d at 458.

The same is true of Plaintiffs' allegation that Defendant Bombardier breached the implied warranty of fitness for a particular purpose. The conclusory allegations that contractual privity exists because Bombardier issued an express warranty (*see* Am. Compl. ¶¶ 121, 122) do not support an implied warranty claim against Bombardier for the same reasons identified above. Consequently, Counts VI and VIII against Defendant Bombardier shall be dismissed from the Amended Complaint.

In contrast, Plaintiffs' implied warranty claims against retailer Defendant Kings Bay, Counts VII and IX, do not suffer the same fatal defect. Plaintiffs' allegations of breach of implied warranty of merchantability and fitness for a particular purpose both state, "Kings Bay was in privity with Plaintiff because the [Vehicle] was purchased from Kings Bay for use by Plaintiff." Am. Compl. ¶¶ 109, 134. Defendant Kings Bay argues that because Plaintiff Wade Hicks' mother-in-law and non-party, Carrie Brewster, was the individual who purchased the vehicle from Kings Bay, Plaintiffs themselves are not in contractual privity with Kings Bay. KBP Mot. at 15. However, Florida law states,

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his or her buyer, who is a guest in his or her home or who is an employee, servant or agent of his or her buyer if it is reasonable to expect that such person

> may use, consume or be affected by the goods and who is injured in
> person by breach of the warranty.

Fla. Stat. § 672.318.  Plaintiffs plead that the purchaser of the vehicle, Carrie Brewster, is their family member.  Am. Compl. ¶ 25.  They further plead it is reasonable to expect that Plaintiffs may use the Vehicle, by alleging Plaintiffs were all present and involved in the purchase of the vehicle, as demonstrated by the photo Defendant Kings Bay posted on its Facebook page advertising the sale.  *Id.* ¶ 16.  Thus, Plaintiffs' implied warranty claims against Defendant Kings Bay are well-pled under Florida law.  The Court therefore dismisses Counts VI and VIII against Defendant Bombardier but does not dismiss Counts VII and IX against Defendant Kings Bay.

### E.  Count X – Negligent Misrepresentation

Plaintiffs bring a negligent misrepresentation claim against Defendant Bombardier only, which alleges that Bombardier made representations regarding the character or quality of the Vehicle which were untrue.  Am. Compl. ¶ 147.  Plaintiffs further allege that in addition to affirmative misrepresentations, "Defendant suppressed material information regarding the safety of the [Vehicle], including the dangers known by Defendant to be associated with or caused by the use of the seat belt system in [the Vehicle] during a rollover accident."  *Id.*

Defendant Bombardier argues that Plaintiffs fail to satisfy the heightened pleading standard for negligent misrepresentation.  BRP Mot. at 14.  Defendant argues, "Plaintiff[s] do[] not allege the precise statements, documents, or misrepresentations made, the time and place and persons that made the statements, the content and manner in which the statements misled Plaintiff, or what BRP allegedly gained by the alleged fraud."  *Id.* at 15.  Additionally, Defendant Bombardier posits that Plaintiffs have not pled any of the elements of negligent misrepresentation with the required particularity.  *Id.* at 16.

The Court finds that Plaintiffs have sufficiently pled negligent misrepresentation against Defendant Bombardier.   To prevail on a negligent misrepresentation claim, Plaintiffs must plausibly allege:

> (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation.

*Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1364, 169 (S.D. Fla. 2019).  As an allegation of fraud, negligent misrepresentation is subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires a plaintiff to establish the "who, what, when, where, and how" of the fraud.  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).  To satisfy Rule 9(b)'s "particularity" standard, a complaint must "identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the Defendants gain[ed] by the alleged fraud." *Travelers Prop. Cas. Co. of Am. v. Charlotte Pipe & Foundry Co.*, No. 6:11-CV-19-ORL-28GJK, 2012 WL 983783, at *6 (M.D. Fla. Mar. 22, 2012).  Plaintiffs have met these requirements.

First, Plaintiffs have pled that Defendant Bombardier made a misrepresentation of material fact by alleging "Defendant BRP's representations regarding the character or quality of the [Vehicle] were untrue," "Defendant BRP negligently misrepresented . . . the safety hazards of using a seat belt system in [the Vehicle] during a rollover accident in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its products as safe and effective in order to avoid losses and sustain profits in its sales to consumers," and "[w]hile

BRP repeatedly warns about the possibility of rollovers and tipovers in the Guide, BRP implies that rollovers and tipovers are less likely to occur or may be avoided entirely by following the suggested safety tips . . . ."  Am. Compl. ¶¶ 147, 148, 152.  As such, Plaintiffs have sufficiently identified precise misrepresentations made by Defendant Bombardier for purposes of Rule 9(b).  The Amended Complaint also quotes specific warnings from the Guide provided by Bombardier, which Plaintiffs argue implied the vehicle and three-point seatbelt were safer than they were.  *See, e.g.*, *id.* ¶¶ 152, 153.  Defendant Bombardier may disagree with the allegations or seek to present a defense to them, but that has no bearing on whether this claim has been sufficiently pled.

Second, Plaintiffs adequately allege Defendant Bombardier made misrepresentations without knowledge as to their truth or falsity or under circumstances in which Bombardier ought to have known of their falsity.  *See id.* ¶ 144 ("Defendant BRP is the manufacturer, designer, distributor, seller or supplier of the [Vehicle] and, while engaged in the course of such business, made representations to Plaintiff regarding the character and/or quality" of the Vehicle.).  Similarly, the Amended Complaint also alleges Defendant Bombardier withheld safety information of which it had knowledge.  *See id.* ¶ 147 ("Defendant suppressed material information regarding the safety of the [Vehicle], including the dangers known by Defendant to be associated with or caused by the use of the seat belt system in [the Vehicle] during a rollover accident.").

Third, Plaintiffs sufficiently allege Bombardier intended that the misrepresentation induce another to act on it.  *See id.* ¶ 145 ("Defendant BRP negligent[ly] failed to disclose this information for the purpose of inducing consumers to purchase [ ] BRP's dangerous products.").

And fourth, Plaintiffs adequately allege they suffered injury acting in justifiable reliance on Defendant Bombardier's misrepresentations.  *See id.* ¶ 154 ("Plaintiff reasonably relied upon Defendant's representations to Plaintiff that the [Vehicle] was safe for use and that Defendant's

labeling, advertisements and promotions fully described all known risks of the product.").  This portion of the Amended Complaint also satisfies the requirement that Plaintiffs identify what Defendant Bombardier gained by the alleged fraud.  *See id.* ¶ 154.  Consequently, the Court denies Defendant Bombardier's Motion as to Count X.

### F.  Count XII – FDUTPA Violations

Plaintiffs allege both Defendants violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201 *et seq*.  FDUTPA "is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer." *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985).  To state a FDUTPA claim, a plaintiff must plead the following elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).  "The measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered according to the contract of the parties." *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1344 (S.D. Fla. 2011) (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)).

Defendants argue that Plaintiffs lack standing to bring a claim under FDUTPA because "no party to this case entered into a contract for the sale of the Vehicle, and no party to this case accepted delivery of it or paid for it."  BRP Reply at 8.  As discussed previously, Plaintiffs did not purchase the Vehicle.  And other courts have held that under Florida law, an individual who does not purchase the product at issue cannot recover damages for the alleged diminution of value under FDUTPA.  *See Rife v. Newell Brands, Inc.*, No. 20-80021, 2022 WL 4598666, at *26 (S.D. Fla. Sept. 30, 2022) (plaintiff who received defective pressure cooker as a gift did not have standing to bring FDUTPA claim); *see also Geniva O'keefe v. Pick Five Imports, Inc.*, No. 8:18-CV-1496-T-

35AEP, 2019 WL 13083614, at *10 (M.D. Fla. June 14, 2019) (dismissing FDUTPA claims where plaintiffs could not allege that they purchased the allegedly defective products and therefore suffered no injury-in-fact).

In response, Plaintiffs argue that nothing in the relevant statute, Fla. Stat. § 501.203(9), or case law limits a FDUTPA cause of action to the immediate purchaser.  Resp. to BRP Mot. at 21 (citing *Warren v. Monahan Beaches Jewelry Ctr., Inc.*, 548 So. 2d 870, 873 (Fla. 1st DCA 1989)). In *Warren*, the only case Plaintiffs cite for this proposition, Florida's First District Court of Appeal allowed a plaintiff—the fiancé of the original purchaser of an engagement ring—to pursue a claim under FDUTPA.  The court stated, "the issue of whether the intended beneficiary of a gift may be classified as a 'consumer' under Chapter 501 appears to be an issue of first impression in this state."  *Warren*, 548 So. 2d at 873.  The court explained that plaintiff fell within the category of "consumers" the statute is intended protect.  Specifically, § 501.203(9) defines "consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint adventure; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination" and "[n]othing in the foregoing statute or in case law limits causes of action to the immediate purchaser."  *Id.*  The court concluded "that Chapter 501 applies and that appellant, as the beneficiary of the consumer transaction is a 'consumer' in her own right and entitled to the remedies afforded.  Our determination is limited to legal sufficiency of the allegations of the complaint and in no way absolves the plaintiff of the obligation to prove these allegations."  *Id.*

However, the Court agrees with Defendants that *Warren* is inapplicable to Defendants' argument.  In *Warren*, the court limited its holding to whether the plaintiff met the definition of "consumer" under Fla. Stat. § 501.203.  The court did not address whether plaintiff lacked Article III standing.  As the court explained in *Rife*, since the only way to measure actual damages in a

FDUTPA claim consists of the value between what was promised and what was delivered or the total price paid, a plaintiff who did not buy the product cannot recover damages under FDUTPA. *Rife*, 2022 WL 4598666, at *26.  Because Plaintiffs did not purchase the Vehicle (and unlike the plaintiff in *Warren*, do not allege they received the Vehicle as a gift), their FDUTPA claims fail.

However, the Court will not grant Defendants' request to require Plaintiffs to post a bond for the damages and fees caused by Plaintiffs' "frivolous" FDUTPA claim.  *See* BRP Mot. at 19. Defendants request the Court "use the discretion afforded to it by § 501.211(3) to hold an evidentiary hearing and determine an appropriate bond that will protect BRP from unfairly expending resources to defend against Plaintiffs' frivolous and harassing FDUTPA claim." *Id.* at 20.  In light of *Warren*, cited by Plaintiffs, the Court does not find Plaintiffs' FDUTPA claim "frivolous" or "harassing."  While the Court does not find *Warren* controlling here, the existence of a Florida case that suggests a non-purchaser may bring a FDUTPA claim rebuts the assertion that this claim was without merit.  Thus, Defendants' Motion is granted as to Count XII, but their request for damages and fees associated with defending against this claim is denied.

### G.  Counts V and XI – Permanent Injury to Parent and Loss of Consortium

Plaintiffs bring claims against both Defendants alleging negligence for permanent injury to parent pursuant to Fla. Stat. § 768.0415 (Count V) and loss of consortium (Count XI). Defendants argue that the Court should dismiss both counts because the claims are derivative in nature, and where a plaintiff's direct-liability claims fail, the derivative claims fail as well.  BRP Mot. at 16; KBP Mot at 14 (citing *Gomez v. Avis Rent A Car Sys., Inc.*, 596 So. 2d 510, 511 (Fla. 3d DCA 1992)).  Defendants do not otherwise attack the sufficiency of these two claims.  Since the Court will not dismiss Plaintiffs' direct-liability claims, Defendants present no reason to dismiss the derivative claims.  Therefore, Defendants' Motions are denied as to Counts V and XI.

### H. Punitive Damages

Finally, both Defendants move to strike Plaintiffs' claim for punitive damages. Defendant Bombardier argues that "Florida law allows recovery of punitive damages only for 'intentional misconduct or gross negligence.'" BRP Mot. at 18; (citing Fla. Stat. § 768.72(2) & (3)). Defendant Kings Bay argues that although the prayer for relief seeks punitive damages, no individual Count against Kings Bay does so. KBP Mot. at 17 (citing Am. Compl. ¶¶ 56, 65, 73, 82, 92, 105, 117, 142, 160, 170).

While Defendants arguments are well-taken, the Court will not strike Plaintiffs' request for punitive damages at this time. Courts in this district have permitted requests for punitive damages to survive past the motion to dismiss phase in product liability cases where the complaint alleges actual knowledge of a danger posed by the product. *See, e.g.*, *Alfeo v. I-Flow, LLC*, No. 11-80837, 2012 WL 442981, at *2 (S.D. Fla. Feb. 10, 2012). In *Alfeo*, the court explained, "[a]t least one Florida Court has determined that a product manufacturer's actual knowledge of a danger followed by a failure to warn of that danger supports punitive damages." *Id.* (citing *Holmes v. Bridgestone/Firestone, Inc.*, 891 So. 2d 1188, 1191–92 (Fla. 4th DCA 2005)). Here, since Plaintiffs have pled knowledge on behalf of Defendants regarding the product defects at issue, (Am. Compl. ¶¶ 51, 53, 54), the Court will not strike the request for punitive damages at this stage of the proceedings.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant Bombardier Recreational Products Inc.'s Motion to Dismiss, [ECF No. 20], is **GRANTED IN PART**. Counts VI, VIII, and XII are **DISMISSED** *with prejudice*. Defendant Bombardier's Motion is **DENIED** in all other respects.

2.  Defendant Kings Bay Powersports' Motion to Dismiss, [ECF No. 21], is **GRANTED IN PART**.  Count XII is **DISMISSED** *with prejudice*.  Defendant Kings Bay's Motion is **DENIED** in all other respects.

**DONE AND ORDERED** in Miami, Florida, this 26th day of July, 2023.

**RODOLFO A. RUIZ II**
 **UNITED STATES DISTRICT JUDGE**